UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| YVONNE TAYLOR, for S.T[1]., ) | CASE NO. 1:12CV696 |
| ) | |
| Plaintiff, ) | JUDGE DONALD C. NUGENT |
| ) | Magistrate Judge George J. Limbert |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN,[2] ) | |
| COMMISSIONER OF ) | **REPORT & RECOMMENDATION** |
| OF SOCIAL SECURITY, ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Defendant. ) | |

Yvonne Taylor ("Plaintiff"), acting on behalf of S.T., a minor ("Claimant"), seeks judicial review of the final decision of Carolyn W. Colvin ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying Claimant's Supplemental Security Income ("SSI") claim. ECF Dkt. #1. Plaintiff asserts that the ALJ erred in failing to perform a proper analysis of whether Claimant's impairments met Listing 112.11 for Attention Deficit Hyperactivity Disorder ("ADHD") and erred in interpreting his treating physician's report as showing that Claimant had less than a marked limitation in attending and completing tasks. ECF Dkt. #13. For the following reasons, the undersigned recommends that the Court REVERSE the ALJ's decision and REMAND this case.

I.   **PROCEDURAL HISTORY**

On July 31, 2009, Plaintiff, acting on behalf of Claimant, filed an application for children's SSI, alleging disability due to ADHD, and "anger, violent, disrespectful," behavior as of July 13, 2007. ECF Dkt. #10 at 172, 180.[3] The application was denied initially and on reconsideration. *Id*. at 117-122.

---

[1]*See* L.R. 8.1(a)(2).

[2] On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

[3] Page numbers refer to "Page ID" numbers in the electronic filing system.

Plaintiff filed a request for a hearing by an ALJ and on July 11, 2011, an ALJ conducted an administrative hearing, via videoconference, where Plaintiff and Claimant appeared and were represented by counsel. ECF Dkt. #10 at 75-114, 125. At the hearing, the ALJ accepted testimony from Claimant and Plaintiff. *Id*. On August 25, 2011, the ALJ issued a Notice of Decision - Unfavorable. *Id.* at 53-65. On January 14, 2012, the Appeals Council denied Plaintiff's request for review. *Id*. at 45.

On March 22, 2012, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On September 20, 2012, Plaintiff filed a brief on the merits. ECF Dkt. #13. On November 5, 2012, Defendant filed a brief on the merits. ECF Dkt. #14. No reply brief was filed.

## II. **STEPS TO DETERMINE WHETHER CHILD IS ENTITLED TO SSI**

In order to qualify for childhood SSI benefits, a claimant must show that he or she has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and that is expected to cause death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.906. An ALJ must proceed through the required sequential steps for evaluating entitlement to childhood SSI. 20 C.F.R. § 416.924(a). The three-step procedure requires the ALJ to determine whether a child:

> (1) is performing substantial gainful activity;
>
> (2) has a "severe" impairment or combination of impairments; and
>
> (3) whether the impairment or combination of impairments are of listing-level severity in that the impairment(s) either meets, medically equals or are the functional equivalent in severity to an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing");

20 C.F.R. § 416.924(a)-(d). In order to *meet* a Listing, the child's impairment(s) must be substantiated by medical findings shown or described in the listing for that particular impairment. 20 C.F.R. § 416.925(d)(emphasis added). In order to *medically equal* a Listing, a child's impairment(s) must be substantiated by medical findings at least equal in severity and duration to those shown or described in the listing for that particular impairment. 20 C.F.R. § 416.926(a) (emphasis added). In order to *functionally equal* a Listing, the child's impairment(s) must be of

-2-

listing-level severity; *i.e.*, it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a)(emphasis added).

## III. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## IV. RELEVANT PORTIONS OF THE ALJ'S DECISION

In the instant case, the ALJ found that Claimant was a preschooler at the time of the filing of the application and a school-age child at the time of the decision, he was not engaged in substantial gainful activity, and he had the severe impairments of ADHD, disruptive behavior disorder not otherwise specified, astigmatism, and hyperopia. ECF Dkt. #10 at 56. The ALJ further found that Claimant's severe impairments, individually or in combination with other impairments, did not meet or medically equal any of those in the Listings. *Id.* The ALJ specifically identified Listings 102.02 (loss of central visual acuity), 112.04 (mood disorders) and 112.11 (ADHD). *Id.* She then determined that Claimant's impairments, individually or in combination, did not meet or functionally equal the Listings. *Id.* at 56-65. Based upon her findings, the ALJ concluded that Claimant was not disabled and therefore not entitled to childhood SSI. *Id.* at 65.

## V.     ANALYSIS

In the Step Three section of her decision, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the Listings. ECF Dkt. #10 at 56. The entirety of the ALJ's Step Three section stated: "[t]he undersigned has considered listings 102.02, 112.04, and 112.11. However, the medical evidence of record does not indicate that the claimant's impairment reach listing level severity." *Id*. The ALJ then proceeded in a separate section to find that Claimant's impairments did not functionally equal the Listings. *Id*. at 56-65. She provided analysis of each of the six domains for this determination. *Id.*

The burden of proof at Step Three of the sequential entitlement to children's social security benefits rests with Plaintiff. *Franklin ex rel. L.F. v. Comm'r of Soc. Sec.*, No. 4:10CV2215, 2012 WL 727799, at *1 (N.D. Ohio Feb. 16, 2012), citing *Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 391 (6th Cir. 1999). However, the ALJ must "nevertheless provide articulation of step three findings that will permit meaningful review of those findings." *Franklin*, citing *Bledsoe v. Barnhart*, 165 Fed. App'x 408, 411 (6th Cir. 2006) and *Hunter v. Comm'r of Soc. Sec*., No. 1:09CV2790, 2011 WL 6440762, at *3-4 (N.D. Ohio Dec. 20, 2011). "As a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion."  *Hernandez ex rel. L.A. v. Astrue*, No. 1:10CV1295, 2011 WL 4899960, at *6, citing *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011); *see also Wilson v. Comm'r of Soc.* Sec., 378 F.3d 541, 544-546 (6th Cir. 2004).

Plaintiff contends that the ALJ committed prejudicial error when she failed to articulate her analysis at Step Three in determining that Claimant's impairment did not meet the requirements of Listing 112.11. Listing 112.11 states the following:

> Attention Deficit Hyperactivity Disorder.  Manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity.
>
> The required level of severity of these disorders is met when the requirements in both A and B are satisfied.
>
>> A.     Medically documented findings of all three of the following:
>>
>>> 1.     Marked inattention; and
>>>
>>> 2.     Marked impulsiveness; and
>>>
>>> 3.     Marked hyperactivity;

> and
>
> B. For older infants and toddlers (age 1 to attainment of age 3), resulting in at least one of the appropriate age-group criteria in paragraph B1 of 112.02; or, for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

Listing 112.11. Since Claimant was a child (as opposed to an older infant or toddler) as defined by Listing 112.11B at the time of the alleged date of disability of July 13, 2007, the date of the filing of the application on July 13, 2009, and the date of the ALJ's decision, paragraph B2 of Listing 112.02 applies to his case. That paragraph provides in relevant part that:

> 112.02 Organic Mental Disorders
>
> B  Select the appropriate age group to evaluate the severity of the impairment:
>
> 2. For children (age 3 to attainment of age 18), resulting in at least two of the following:
>
>> a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or
>>
>> b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or
>>
>> c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or
>>
>> d. Marked difficulties in maintaining concentration, persistence, or pace.

Listing 112.02B2.

Neither party argues over whether Claimant meets the first part of Listing 112.11, Part A of the Listing, which requires medically documented findings of marked inattention, marked impulsiveness and marked hyperactivity. Defendant also concedes that the ALJ implicitly found that Claimant was markedly limited in age-appropriate social functioning under Listing 112.11 because she had found him markedly limited in the functional equivalence domain of interacting and relating with others, which is sufficiently similar to the social functioning finding of Listing 112.02B2. ECF Dkt. #14 at 593, n. 5. Accordingly, if the ALJ would have determined that Claimant was markedly limited in maintaining concentration, persistence or pace, as argued by Plaintiff, the ALJ would have found Claimant disabled because he would have met the requirements of Listing 112.11 by having two of the age-appropriate criteria in Listing 112.02B2. Plaintiff asserts that Claimant's impairment did meet Listing 112.11 and the ALJ committed prejudicial error by finding to the contrary and not articulating her Step Three analysis.

In *Reynolds v. Commissioner of Social Security*, 424 Fed. App'x 411 (6th Cir. 2011), the Sixth Circuit Court of Appeals reversed and remanded the case when the ALJ found that the claimant had severe physical and mental impairments at Step Two of the sequential analysis but failed to analyze the claimant's back impairment at Step Three despite concluding that his back impairment had failed to meet or equal a Listing. The Sixth Circuit noted that while the ALJ had thoroughly addressed the claimant's severe mental impairments in his Step Three analysis, " '[n]o analysis whatsoever was done as to whether Reynolds' physical impairments (all summed up in his finding of a severe 'back pain' impairment) met or equaled a Listing under section 1.00, despite his introduction concluding that they did not." *Id.* at 415. The Sixth Circuit found that:

> In short, the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence.

*Id.* at 416 [citations omitted].

Courts within this District have applied *Reynolds* in cases where the ALJ provided only a conclusory statement and no analysis at Step Three in finding that a claimant's physical impairments did not satisfy a Listing. *See e.g., Shea v. Comm'r of Soc. Sec.*, No. 1:11CV1076, 2012 WL 967072

(N.D. Ohio Mar. 21, 2012) (Adams, J.), adopting *Shea v. Astrue*, No. 1:11CV1076, 2012 WL 967088 (N.D. Ohio Feb. 13, 2012)(case reversed and remanded where ALJ offered no analysis at Step Three to support his conclusory statement that claimant's physical impairments did not meet a Listing); *Keyes v. Astrue,* 2012 WL 832576, at *6 (N.D. Mar. 12, 2012)(Gwin, J.)(addressing claimant's objection to Report and Recommendation and finding that ALJ failed to evaluate physical impairments at Step Three even though claimant had not raised the issue in her brief to United States Magistrate Judge); *see also May v. Astrue*, No. 4:10CV1533, 2011 WL 3490229 (N.D. Ohio Aug. 10, 2011) (Adams, J.), adopting *May v. Astrue*, No. 4:10CV1533, 2011 WL 3490186, at *9 (N.D. Ohio June 1, 2011)(same).

In the instant case, while the ALJ cited to the Listings that she had considered, she, similar to the ALJ in *Reynolds*, failed to identify the medical evidence upon which she relied, failed to compare that evidence to Listing 112.11 and otherwise failed to explain her conclusion that Claimant's mental impairment did not meet or medically equal that Listing. Rather, the ALJ in this case merely stated that "the medical evidence of record does not indicate that the claimant's impairment reach listing level severity." ECF Dkt. #10 at 56.

While no heightened articulation at Step Three is required, an ALJ must nevertheless articulate findings that will permit meaningful judicial review of her findings. *Hunter v. Comm'r of Soc. Sec.*, No. 1:09CV2790, 2011 WL 6440762, at *3-4 (N.D. Ohio Dec. 20, 2011). The undersigned recommends that the Court find that meaningful judicial review of the ALJ's Step Three findings in this case is not possible.

Defendant contends that the ALJ's functional equivalence analysis provides the basis for upholding her Step Three finding that Claimant's impairments did not meet or medically equal the Listings. ECF Dkt. #14 at 594. However, a number of cases in this Circuit hold that an ALJ's functional equivalence analysis does not suffice to substitute for the Step Three meets or equals analysis. *See M.G. v. Comm'r of Soc. Sec.,* 861 F.Supp.2d 846, 859, n.6 (E.D. Mich. 2012)(collecting cases); *Evans ex rel. DCB v. Comm'r of Soc. Sec.*, No. 11-cv-11862, 2012 WL 3112415, at *9 (E.D. Mich., Mar. 21, 2012), unpublished (collecting cases).

Defendant also asserts that the ALJ's failure to articulate her Step Three findings is harmless error because the record supports the ALJ's overall determination and the ALJ's functional equivalence findings show that Claimant did not have two marked limitations as required in order to meet Listing 112.11. ECF Dkt. #14 at 593-594. However, in *Reynolds,* the Sixth Circuit found that the ALJ's Step Three error in failing to evaluate the evidence concerning the claimant's back impairment was not harmless because "the regulations indicate that if a person is found to meet a Listed impairment, they are disabled within the meaning of the regulation and are entitled to benefits; no more analysis is necessary." 424 Fed. App'x at 415. Thus, in this case, if the ALJ had found that Claimant met one other marked impairment in Listing 112.11 (112.02B2), then she would have had to have found Claimant disabled. Thus, the Court should find that the ALJ's Step Three error is not harmless.

Moreover, even if the Court were to review the ALJ's functional equivalence analysis in this case to determine whether it could overcome the inadequate Step Three analysis, the undersigned recommends that the Court find that the ALJ's functional equivalence findings actually present additional issues that require remand. An ALJ's failure to explain how she reached her conclusion that a claimant's impairments do not meet or medically equal a Listing can constitute harmless error where the review of the decision as a whole leads to the conclusion that no reasonable fact finder, following the correct procedure, could have resolved the factual matter in another manner. *See Hufstetler v. Comm'r of Soc. Sec.*, No. 1:10CV1196, 2011 WL 2461339, at \*10 (N.D. Ohio June 17, 2011). In *Hufstetler*, the Court found that the ALJ's lack of sufficient analysis at Step Three was harmless error because the ALJ's Step Four findings provided sufficient information for the Court to determine that no reasonable administrative fact finder would have resolved the matter differently. 2011 WL 2461339, at \*10.

The relevant Listing in this case, Listing 112.11, requires that children age 3 to 18 have marked inattention, impulsiveness, and hyperactivity resulting in at least two of the appropriate age-group criteria in paragraph B2 of Listing 112.02, which are categories very similar to the six domains in functional equivalence. Listing 112.11. Defendant does not argue that Claimant fails the Part A criteria by not having marked inattention, impulsiveness and hyperactivity. The

-8-

categories at issue in this case are those of marked impairment in age-appropriate social functioning and marked difficulties in maintaining concentration, persistence or pace.

As indicated above, Defendant concedes that the ALJ implicitly found that Claimant was markedly limited in social functioning under Listing 112.11 when she agreed with Dr. Burns, Claimant's treating pediatrician, that Claimant was markedly limited in the domain of interacting and relating with others for functional equivalence purposes. ECF Dkt. #14 at 593. Defendant also concedes that the inquiry for determining Claimant's limitations in concentration, persistence or pace and his limitations in attending and completing tasks under functional equivalence for Listing 112.11, involve similar factual considerations. *Id.* at 591.

In determining whether a child's impairment functionally equals a Listing, the Commissioner assesses all relevant factors, including:

> (1) how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive settings;
>
> (2) how the child functions in school; and
>
> (3) how the child is affected by his medications or other treatment.

20 C.F.R. § 416.926a(a)(1)- (3). In considering whether a child's impairment functionally equals the Listings, the Commissioner begins by evaluating how a child functions on a daily basis and in all settings as compared to other children of the same age who do not have impairments. 20 C.F.R. § 416.926a(b).

The Commissioner considers how a child's functioning is affected during his activities at home, school and in his community in terms of six domains:

> (i) acquiring and using information;
>
> (ii) attending and completing tasks;
>
> (iii) interacting and relating with others;
>
> (iv) moving about and manipulating objects;
>
> (v) caring for yourself; and,
>
> (vi) health and physical well-being.

-9-

20 C.F.R. § 416.926a(b)(1)(i)-(vi).  Each of the domains sets forth a description and includes examples of activities typical of children in each age group and functional limitations that may be considered.  20 C.F.R. § 416.926a(f)(3).  The domain at issue in this case is that of attending and completing tasks.  20 C.F.R. § 416.926a(h).  The regulation provides in relevant part that:

> h) Attending and completing tasks. In this domain, we consider how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them.
> (1) General.
>
>> (i) Attention involves regulating your levels of alertness and initiating and maintaining concentration. It involves the ability to filter out distractions and to remain focused on an activity or task at a consistent level of performance. This means focusing long enough to initiate and complete an activity or task, and changing focus once it is completed. It also means that if you lose or change your focus in the middle of a task, you are able to return to the task without other people having to remind you frequently to finish it.
>>
>> (ii) Adequate attention is needed to maintain physical and mental effort and concentration on an activity or task. Adequate attention permits you to think and reflect before starting or deciding to stop an activity. In other words, you are able to look ahead and predict the possible outcomes of your actions before you act. Focusing your attention allows you to attempt tasks at an appropriate pace. It also helps you determine the time needed to finish a task within an appropriate timeframe.
>
> (2) Age group descriptors--
>
>> * * *
>>
>> (iii) Preschool children (age 3 to attainment of age 6). As a preschooler, you should be able to pay attention when you are spoken to directly, sustain attention to your play and learning activities, and concentrate on activities like putting puzzles together or completing art projects. You should also be able to focus long enough to do many more things by yourself, such as getting your clothes together and dressing yourself, feeding yourself, or putting away your toys. You should usually be able to wait your turn and to change your activity when a caregiver or teacher says it is time to do something else.
>>
>> (iv) School-age children (age 6 to attainment of age 12). When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores.

-10-

> You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.
>
> \* \* \*
>
> (3) Examples of limited functioning in attending and completing tasks. The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; e.g., an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.
>
>> (i) You are easily startled, distracted, or overreactive to sounds, sights, movements, or touch.
>>
>> (ii) You are slow to focus on, or fail to complete activities of interest to you, e.g., games or art projects.
>>
>> (iii) You repeatedly become sidetracked from your activities or you frequently interrupt others.
>>
>> (iv) You are easily frustrated and give up on tasks, including ones you are capable of completing.
>>
>> (v) You require extra supervision to keep you engaged in an activity.

20 C.F.R. § 416.926a(h). Lengthy definitions for "marked" and "extreme" are set out in § 416.926a(e). "Marked" limitation means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *See* § 416.926a(e)(2)(i). An individual has a "marked" limitation when the impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." *Id*.

In her decision on functional equivalence, the ALJ explained that she gave great weight to the opinion of Dr. Burns, Claimant's treating pediatrician, as his findings were "consistent with the testimony of the claimant and his mother as well as educational records and medical evidence." ECF Dkt. #10 at 59. Dr. Burns completed a questionnaire on June 21, 2011 and opined that Claimant was moderately limited in acquiring and using information, markedly limited in interacting and relating with others, and he found that Claimant had no limitations in moving about and

-11-

manipulating objects, caring for himself, or in the domain of health and physical well-being. *Id.* at 559-562. As to the area of attending and completing tasks, Dr. Burns placed an "X" next to "marked limitation" and he drew an arrow upward from that "X" to the "moderate limitation" designation, but he did not check the "moderate limitation" box. *Id.* at 560. He wrote next to this section that Claimant has "trouble sitting still. Talks out of turn. Does not pay attention well." *Id.* The ALJ discussed Dr. Burns' designation in this area and concluded that Dr. Burns "found the claimant to [sic] moderate to marked, or less than marked, limitation in attending and completing tasks due to his trouble paying attention, trouble sitting still, and talking out of turn." *Id.* The ALJ also gave great weight to the evaluations and opinions of Claimant's teachers. *Id.* Based upon this interpretation, the ALJ found that Claimant suffered from only one marked limitation, that of interacting and relating to others, and she found that Claimant's impairment did not meet or functionally equal Listing 112.11 and he was therefore not disabled.

Plaintiff asserts that Claimant meets Listing 112.11 and functionally equals the Listing because Dr. Burns found in his June 21, 2011 assessment that Claimant had "more than a moderate" limitation in attending to and completing tasks, which meets the definition of "marked" under the Listings. ECF Dkt. #13 at 574. Plaintiff cites Listing 112.00(C) which defines a "marked" limitation: "[w]here 'marked' is used as a standard for measuring the degree of limitation it means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function independently, appropriately, effectively, and on a sustained basis." Listing 112.00(C).

Defendant contends that limitations that are "more than moderate" are not "marked" and therefore do not meet the "marked" limitation definition. ECF Dkt. #14 at 592. Defendant interprets Dr. Burns' June 21, 2011 opinion to find that Claimant was markedly limited in the domain of social interaction, but was only more than moderate, which is less than markedly limited, in attending and completing tasks. *Id.*

Thus, the parties disagree on the ALJ's interpretation of Dr. Burns' placement of the "X" next to "marked limitation" with the arrow pointing upward toward "moderate limitation." Plaintiff

-12-

contends that the ALJ erred in interpreting Dr. Burns' designation to mean that he found Claimant's limitations in attending to completing tasks "less than marked." ECF Dkt. #13 at 574. Plaintiff points to medical evidence and teacher evaluations supporting her assertion. *Id*. She argues that Dr. Burns' designation met the definition of "marked" which is "more than moderate and less than extreme" since he placed the "X" in the marked limitation section and drew the arrow upward toward "moderate." *Id*. at 577, citing Listing 112.00(C). Defendant asserts that the ALJ was correct in her interpretation that this designation signified a less than marked finding as while the medical evidence showed that Claimant had some difficulties in this domain, the ALJ reasonably concluded that his symptoms "improved with medication compliance and redirection." ECF Dkt. #14 at 591. Defendant cites to medical evidence and teacher evaluations from 2011 to support his interpretation of Dr. Burns' designation. *Id*. at 591-592. Defendant also points out the standard to meet functional equivalence is not whether Claimant had "more than moderate" limitations, but rather, whether the limitation is "marked" or whether it is "less than marked." *Id*. at 592.

The undersigned recommends that the Court find that remand of this case is required because of this discrepancy in interpreting Dr. Burns' opinion on whether Claimant has a marked limitation in the area of attending to and completing tasks. The ALJ's failure to articulate her explanation of why Claimant's impairments did not meet Listing 112.11 is not harmless error because, even if the Court could look to the ALJ's functional equivalence findings to explain the Step Three findings, the functional equivalence findings themselves are lacking. First, the ALJ gave great weight to the opinions of treating pediatrician Dr. Burns and found his opinion supported by the testimony, the teachers' reports and the medical evidence. Yet in relying upon this opinion, the ALJ injected her own interpretation of Dr. Burns' opinion when she determined without explanation that his placement of the "X" in "marked" designation with the upward arrow toward "moderate" limitation meant that Dr. Burns found Claimant not markedly limited in attending to and completing tasks. Dr. Burns completed his assessment on June 21, 2011 and his medical records show that as of January 6, 2011, Claimant's father was complaining that Claimant was fidgeting in class, unable to stay seated, was inattentive and unable to stay on task. ECF Dkt. #10 at 497. The January 2011 teacher reports support the limitations in attending to and completing tasks as well, as a January 6,

-13-

2011 evaluation found that very often Claimant failed to finish things he started, he was messy, he was inattentive and easily distracted, and he failed to carry out assigned tasks, and he somewhat or sometimes could not concentrate, could not sit still, fidgeted, daydreamed, acted without thinking, had difficulty following instructions, talked out of turn, and talked to much. *Id*. at 507. Dr. Burns' medical note of February 3, 2011 also reported that Claimant's main problems included inattentiveness and inability to stay on task. *Id.* at 501. Dr. Burns reported that Claimant's medications were moderately effective and he was doing better with a new medication. *Id*. The teacher evaluations noted no concerns about medication compliance and the January 21, 2011 and February 2011 teacher evaluations show that Claimant no longer "very often" engaged in the behaviors that he had in the January 6, 2011 evaluation, but he "somewhat or sometimes" failed to finish things he started in the morning, and sometimes in the afternoon failed to finish things, could not concentrate, could not sit still, fidgeted, had difficulty following directions, talked out of turn, was messy, was inattentive and easily distracted, and he talked too much. *Id*. at 507-508, 526-527. March 3, 2011 medical notes from Dr. Burns report Claimant's inability to stay seated in school, his inattentiveness and his inability to stay on task. *Id*. at 503. April 3, 2011 and May 19, 2011 medical notes also show that while Claimant was doing better in school, he still had problems staying on task, completing homework assignments, disrupting other students and not following directions. *Id*. at 555-557.

Without further clarification from Dr. Burns as to the meaning of his notation in the attending to and completing of tasks on his June 21, 2011 assessment, and without adequate articulation of the Step Three analysis by the ALJ, the undersigned recommends that the Court find that the error by the ALJ in failing to adequately articulate whether Claimant's impairment met Listing 112.11 at Step Three is prejudicial error. Further, reliance upon the functional equivalence analysis by the ALJ does not cure the defect at Step Three. While the ALJ cited to Claimant's ability to play in a basketball league and his abilities to read and play video games as evidence of less than marked limitations in attending and completing tasks, these findings fail to provide substantial evidence of less than a marked limitation as the ALJ placed great weight on Dr. Burns' June 21, 2011 without clarification by him of his designation and she failed to otherwise explain

-14-

why she rejected Dr. Burns' notes in this assessment that Claimant had trouble sitting still, talked out of turn and did not pay attention, which coincided with the teacher evaluations finding the same.

## VI.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court reverse the ALJ's decision and remand this case for Step Three redetermination with analysis, and for redetermination, evaluation and analysis as to functional equivalence as to Listing 112.11 with special emphasis on Dr. Burns' assessment and opinion as to Claimant's degree of limitation in the area of attending to and completing tasks.

DATE: May 30, 2013                                         */s/George J. Limbert*
                                                                         GEORGE J. LIMBERT
                                                                         UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).